1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN CARLOS HERNANDEZ, CDCR #BG-2900,<br><br>                                   Plaintiff,<br><br>               vs.<br><br>KATHLEEN ALLISON, et al.,<br><br>                                   Defendants. | Case No.:  22-CV-1143-RSH-JLB<br><br>**ORDER GRANTING MOTIONS TO PROCEED *IN FORMA PAUPERIS* AND DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM**<br><br>**[ECF Nos. 6, 8]** |

On August 1, 2022, Plaintiff Julian Carlos Hernandez, a state prisoner proceeding *pro se*, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, accompanied by a Motion to Proceed *In Forma Pauperis* ("IFP") and a Motion to Appoint Counsel. ECF Nos. 1–2, 4. In his initial Complaint, Plaintiff claimed he was denied due process during a disciplinary hearing; prohibited from visiting the prison law library in violation of his right of access to the courts; subjected to cruel and unusual punishment through deliberate indifference to pain in his arm and shoulder; and retaliated against. ECF No. 1 at 3–6.

On August 29, 2022, the Court denied Plaintiff's motion to proceed IFP and motion for appointment of counsel without prejudice, and dismissed the Complaint with leave to amend. ECF No. 5. Plaintiff has now filed a First Amended Complaint ("FAC") along with two motions to proceed IFP. ECF Nos. 6–8. For the reasons discussed below, the Court

grants Plaintiff's motions to proceed IFP but dismisses the FAC.

## I.    Motions to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to prepay the entire fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *see Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20 percent of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) & (4). The institution collects subsequent payments, assessed at 20 percent of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1)–(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his two IFP Motions, Plaintiff has submitted two copies of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report—one dated August 18, 2022 and one dated September 26, 2022. ECF No. 6-1 at 3; ECF No. 8 at 4. Use of either statement would achieve the same result, but the statement

---

[1]     In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

closest in time to the filing of the original Complaint indicates Plaintiff had an average monthly balance of $378.26 and average monthly deposits of $35.00, and both certificates show an available balance of $0.00 in his account. ECF No. 6-1 at 3; *see* ECF No. 8 at 7.

The Court **GRANTS** Plaintiff's Motions to Proceed IFP (ECF Nos. 6, 8), and declines to impose an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because both prison certificates indicate he may have no means to pay it. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Legal Standard

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *See* 28 U.S.C. § 1915(h) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program"). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012)

(noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## B.   Plaintiff's Allegations

Plaintiff's claims arise under 42 U.S.C. § 1983, which "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

In the FAC, Plaintiff brings claims for (1) a violation of his due process rights, (2) a violation of his right of access to the courts, and (3) a violation of his right to be free from cruel and unusual punishment. *See* ECF No. 7. The Court discusses each in turn below.

## C.   Analysis

### 1.   Count One Fails to State a Claim

In count one of the FAC, Plaintiff claims a due process violation "in two disciplinary hearings." ECF No. 7 at 6. He states: "[There] are an enormous amount of people involved, so I will state their name, title, what they did or failed to do that resulted in the deprivation

4

of liberty. I will also state the exhibit where a showing may be found." *Id*. He references three letter exhibits, which were not attached to the FAC because he allegedly had been denied "copy service." *Id*. at 6–9. Plaintiff has since filed a separate document titled "exhibits," which include portions of Title 15 of the California Code of Regulations regarding the policies and procedures of the CDCR that Plaintiff contends were violated. *See* ECF No. 9.

Additionally, Plaintiff attached a document to the FAC titled "My Statement," which states:

- the rules violation reports ("RVRs") include "false accusations";
- he "[o]bject[s] to the validity of the hearing";
- he requested, but was denied, "a staff assistant";
- he did not have his mobility limitations accommodated;
- he was not given the proper pain medication or access to the law library as necessary to defend himself;
- he did not have a chance to review the forms he was asked to sign nor provided copies after he refused to sign;
- the actions of the prison officials "[made] it impossible for prisoners to call witnesses to meet the burden of proof"; and
- there was a "failure to give notice" which rendered the disciplinary proceedings unfair.

ECF No. 7-2 at 1–7. He also includes a list of witnesses he called or would have liked to call at his disciplinary hearing and the questions he asked or would have liked to ask. *Id*. at 4–5.

Plaintiff claims that: (1) CDCR Secretary Kathleen Allison failed "to protect against malicious acts by not creating any forms or ways for inmates to be protected from frivolous and malicious charges" resulting in the deprivation of life, liberty and property; (2) Chief Deputy Warden R. Arias[2] failed "to properly train employees on policy & procedures" and was negligent in failing to stop violations of those policies and procedures; (3) Associate

---

[2]      Other than Secretary Allison, Defendants are identified by their first initials, last names, and job titles.

Warden R. Acevedo failed "to stop or correct the deprivation of liberty," and was negligent in failing to properly train employees; (4) Warden W. L. Montgomery was "responsible for the [implementation] of policy and ensuring all staff and inmates are treated [impartially]"; (5) Captain S. Favela failed "to stop, correct, prevent the deprivation" of due process which Plaintiff directly informed him of and which "he [maliciously] disregarded . . . in order to cover/conspire in accord with the misconduct" and "[willfully] and [deliberately, and] falsely reported to his supervisor"; (6) Lieutenants J. Ramirez and T. Goodson "deliberately falsified reports in order to be used as evidence to deprive liberty"; (7) Associate Warden E. Bustamante failed "to train, prevent, stop/intervene or correct deprivation"; (8) Office Assistants C. Cruz and A. Contreras failed to follow regulations "resulting in RVR"; (9) Investigative Services Unit ("ISU") Officers E. Urrutia and F. Adame failed "to follow procedure" under California prison regulations; (10) and Lieutenant A. Amat violated prison regulations by "having observed the incident and/or provided supplemental reports . . . [with] a predetermined belief of guilt" and "deliberately disregarding the time constraints/limitations." ECF No. 7 at 6–7.

In the Court's prior dismissal Order, the Court found that the original Complaint failed to state a due process claim due to the conclusory nature of its allegations, and informed Plaintiff of the pleading requirements of a due process claim. ECF No. 5 at 5–7. Plaintiff was informed that "[t]o state a procedural due process claim, [he] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.'" *Id.* at 5; *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). "[A] prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 1077–78. However, those protections adhere only when the disciplinary action

implicates a protected liberty interest either by exceeding the sentence in "an unexpected manner" or where an inmate is subject to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Where a protected liberty interest is not at stake, the minimum requirements of due process require only that "the findings of the prison disciplinary board . . . [be] supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985).

The allegations in the body of the FAC are once again impermissibly conclusory because they merely state, for example, that Defendants failed to train their employees on policies and procedures which led to the finding of guilt on the RVRs, referencing RVR documentation that is not attached to the FAC. *See* ECF No. 7 at 6–7. In another example, the document titled "My Statement," in which Plaintiff states that the RVRs include "false accusations," fails to identify the underlying rules violations he was charged with or any consequences of the guilty findings. *See* ECF No. 7-2 at 1.

Although Plaintiff alleges in the FAC he was not given adequate notice of the charges against him and had his right to call witnesses at the disciplinary hearing impeded, he has once again failed to allege facts which plausibly suggest a protected liberty interest was implicated sufficient to give rise to those procedural protections. *See Sandin*, 515 U.S. at 484 (holding that procedural protections under *Wolff v. McDonnell*, 418 U.S. 539 (1974) adhere only when the disciplinary action implicates a protected liberty interest either by exceeding the sentence in "an unexpected manner" or where an inmate is subject to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). As with the original Complaint, the FAC fails to identify what charges were brought against him or what, if any, effects arose from his guilty finding. *See id.* Further, Plaintiff again fails to set forth factual allegations that "the findings of the prison disciplinary board [were not] supported by some evidence in the record." *See Hill*, 472 U.S. at 454–55.

Plaintiff contends he is unable to attach documentary proof that he was denied due

7

process because he has not been allowed to make copies of documents regarding his RVRs. But at this stage of these proceedings, Plaintiff needs to allege facts which are within his personal knowledge regarding (1) whether a protected liberty issue arose sufficient to provide him with procedural protections and he was denied those protections, or (2) whether the record lacks "some evidence" to support a guilty finding on his disciplinary charges.

Accordingly, the Court dismisses Plaintiff's due process claim for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112.

### 2.    Count Two Fails to State a Claim

In count two of the FAC, Plaintiff claims a violation of his right of access to the courts. ECF No. 7 at 8. He alleges that he has (or had) one year to file a federal habeas petition containing all claims challenging his commitment offense, but he was not given access to the law library to conduct the needed research. *Id.* He also requests an extension of time to file his federal habeas petition if it is "rejected," and/or to appoint counsel to assist with his filing. *Id*.

As an initial matter, prisoners do not have a constitutional right to access to a law library or legal assistance. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that because inmates lack "an abstract, freestanding right to a law library or legal assistance, and inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense"). Rather, to state a claim denial of access to the courts, a prisoner must establish that he has suffered an "actual injury," that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348–49; *see Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge").

Plaintiff attempts to plead an "actual injury" by alleging an inability to file a federal habeas petition challenging his commitment offense but does so in a conclusory manner.

He fails to include any factual allegations supporting this claim, including when his federal petition is or was due, or how his inability to use the prison law library for research has prevented or delayed him from filing a petition. *See Lewis*, 518 U.S. at 346 ("The tools . . . require[d] to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

In addition, although Plaintiff identifies claims he intends to include in such a petition, he again fails to allege facts sufficient to describe how any action by any Defendant has impaired his ability to visit the law library or caused him to lose a claim. *See* ECF No. 7 at 8. In other words, he has not identified any Defendant he seeks to hold responsible for his inability to file a habeas petition. *See Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Although Plaintiff's allegations include negligent supervision and training against several Defendants, a § 1983 claim cannot sound in negligence or a single allegedly unconstitutional incident. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (holding that "mere negligence in diagnosing or treating a medical condition" does not violate a prisoner's Eighth Amendment) rights; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821–24 (1985) (holding that a claim for improper training cannot be based on an allegation of a single unconstitutional incident).

Accordingly, the Court dismisses Plaintiff's access to courts claim for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112. Given that Plaintiff's claim does not survive screening, the Court also denies as moot Plaintiff's request for extension of time to file a habeas petition and his request for appointment of counsel.

### 3. Count Three Fails to State a Claim

Finally, in count three, Plaintiff claims a violation of his right to be free from cruel and unusual punishment, alleging:

> I've been in pain and had limited use of my arm [movement] and [shoulder] pain since November 2021. I still have not been properly assessed. Dr. Sampson retaliated by denying me use of [an] ADA worker to transport me to & from medical one week after [ankle] surgery and . . . [injured me further] by forcing me to use crutches knowing I have an injury to my shoulder. Ripped wing & [shoulder muscle]. No MRI done on wing. I still am waiting to be treated for this. [There] are days when I need to write so I'm forced to take an excessive amount of mediation to allow me to write for about 20 [minutes] before the pain get[s] to where I have to stop.

*Id*. at 9.

Plaintiff further explains that the pain is affecting his daily activities. *Id*. He claims the lack of medical care has caused him to have acquired Hepatitis A and H-Pylori, as well as two RVRs. *Id*. Plaintiff thus seeks to have his two RVRs overturned and removed from his central file; a steroid shot in his shoulder; counsel appointed to help him prepare a federal habeas petition with an extension of time to file; and costs, fees, and monetary damages. *Id*. at 10, 12.

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992),

*overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Further, "a prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind"—i.e., one of "deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Dr. Sampson is the only Defendant identified in the FAC as having any involvement in Plaintiff's medical care. There are no allegations, however, that Dr. Sampson or any other Defendant actually drew an inference that failing to provide Plaintiff with an ADA worker to transport him presented a serious danger to Plaintiff's health or safety and deliberately disregarded that risk. *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.*

Nor are there allegations in the FAC which plausibly suggest that any Defendant knew of and deliberately disregarded Plaintiff's serious medical needs in requiring him to walk to the medical station on crutches, or that Defendants caused delay in Plaintiff receiving medical care. Thus, the FAC fails to allege an Eighth Amendment deliberate indifference claim against any Defendant.

The same is true with respect to the conclusory retaliation allegation. *See Iqbal,* 556

11

U.S. at 678 (holding that the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting the plausibility standard for pleading a § 1983 claim); *Hentz v. Ceniga*, 402 Fed. App'x. 214, 215 (9th Cir. 2010) (holding that conclusory allegations of retaliation are insufficient to state a claim).

Accordingly, the Court dismisses Plaintiff's Eighth Amendment claim for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112.

### D.    Leave to Amend

In light of his *pro se* status, the Court grants Plaintiff one final opportunity to amend his Complaint in order to attempt to address the pleading deficiencies identified in this Order and the Court's prior dismissal Order (ECF No. 5). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV.    Conclusion and Orders

For the reasons above, the Court:

1.    **GRANTS** Plaintiff's Motions to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF Nos. 6, 8);

2.    **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2);

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on the Secretary of the CDCR, P.O. Box 942883, Sacramento, California 94283-0001;

4.    **DISMISSES** Plaintiff's FAC (ECF No. 7) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a

Second Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Second Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Second Amended Complaint will be considered waived. *See* Civ. L.R. 15.1; *see also Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to file a Second Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: November 16, 2022

Hon. Robert S. Huie
United States District Judge

22-CV-1143-RSH-JLB